Slip Op. 12 -131

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - -x
DEL MONTE CORPORATION,              :

                     Plaintiff,:

          v.                        :    Court No. 07-00109

UNITED STATES,                      :

                     Defendant.:
- - - - - - - - - - - - - - - - - - -x

Opinion & Order

[Upon classification and valuation of
 pouched tunafish products, summary
 judgment for the defendant.]

Decided: October 12, 2012


    Baker & McKenzie LLP (William D. Outman, II) for the plaintiff.

    Stuart F. Delery, Acting Assistant Attorney General; Barbara S. Williams, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Alexander Vanderweide); and Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection (Yelena Slepak), of counsel, for the defendant.


        AQUILINO, Senior Judge: Plaintiff's two-count complaint contests classification by U.S. Customs and Border Protection ("CBP") of fillets or strips of tunafish handpacked in Thailand in microwaveable pouches to which "flavorant media or 'sauces'" were added before sealing for export to the United States *sub nom. Albacore Lemon & Cracked Pepper*, *Yellowfin Lightly Seasoned*, and

*Teriyaki*. The second count complains that CBP incorrectly valued the entries underlying this action.

I

Defendant's answer, while admitting the court's subject-matter jurisdiction pursuant to 28 U.S.C. §1581(a), takes issue as to each count. Indeed, the defendant has now interposed a motion for summary judgment on both. And, consistent with the mandate of USCIT Rule 56(h)(1), annexed to its motion is a separate, short and concise statement of the material facts as to which it contends there is no genuine issue to be tried, to wit:

> 1. The imported merchandise . . . is identified on the invoices as "light meat tuna fillets - lightly seasoned (pouch) 'Starkist' brand" (lightly seasoned tuna pouch) and "albacore tuna fillets - lemon & cracked pepper (pouch) 'Starkist' brand" (lemon and pepper tuna pouch). . . .
>
> 2. The albacore lemon and pepper tuna pouch "consists of large strips or fillets of tuna in a yellow-colored sauce consisting of water, sunflower oil, distilled white vinegar, modified food starch, sugar, salt, citric acid, guar gum, cracked black pepper and flavorants including lemon pepper seasoning and lemon flavor." . . .
>
> 3. The yellowfin lightly seasoned tuna pouch "consists of tuna strips or fillets in a sauce consisting of water, sunflower oil, fresh garlic, salt, xantham gum, vegetable broth and parsley." . . .
>
> 4. In the lemon and pepper tuna pouch, the albacore tuna accounts for 80% of the weight of the pouch contents, the sunflower oil 2.48% of the weight. In the

> lightly seasoned tuna pouch, the yellowfin tuna accounts for 80% of the weight of the pouch contents, the sunflower oil .62% of the weight. . . .
>
> 5. In the lemon and pepper tuna pouch, the sunflower oil acts as a dispersant for the lemon flavoring, so that the flavoring is filtered evenly throughout the pouch. In the lightly seasoned tuna pouch, the sunflower oil acts as an emulsification, a flavor-enhancer, and as mouth-feel or coating. . . .
>
> 6. In both tuna pouch varieties, the tuna is placed in the pouch, then the sauce is added. The tuna is not prepared or cooked in oil, but is processed separately from the sauce. Only the sauce contains oil. . . .
>
> 7. Prior to importation, Del Monte Foods Corp. (Del Monte) and Chotiwat Manufacturing Co. Ltd. (Chotiwat), the manufacturer and packer of the tuna pouches, agreed upon the following terms: (1) $1.67 conversion cost per case of the finished product and (2) Chotiwat would recover 40% of the total tuna for use. . . .
>
> 8. Between March and June, 2005, Chotiwat submitted invoices to Del Monte, unilaterally changing the agreed-upon terms to the following: (1) approximately $3-$3.50 conversion cost per case and (2) Chotiwat could only recover 10% of the total tuna for use. . . .
>
> 9. After importation and following nearly ten (10) months of negotiations with Chotiwat over the conversion cost price and tuna recovery percentage, Del Monte and Chotiwat agreed to the following terms: (1) approximately $1.85 or $1.87 conversion cost per case and (2) 40% recovery of the amount of the tuna. . . .
>
> 10. Chotiwat reimbursed Del Monte approximately $1.5 million.

**Citations omitted.**

Plaintiff's response to this statement admits paragraphs 1, 2, 3, and 6.  It further:

    4.    Admits, but wishes to clarify that the Lemon and Pepper pouches include a sauce or marinade that is 64.7% water and 2.48% sunflower oil and the Lightly Seasoned Tuna Fillets™ pouches include a sauce or marinade that is 90.6% water and 0.62% sunflower oil.

    5.    Admits, but avers that the primary purpose for the addition of sunflower oil to the water-based sauces or marinades included in both varieties of Tuna Fillets™ is to serve as a dispersant.

    \*   \*   \*

    7.    Admits in part, but disagrees with the defendant's charactization that the plaintiff and Chotiwat . . . agreed on specific "terms," and avers that (i) the plaintiff and Chotiwat agreed to utilize Cost Sheets that included all elements to be factored into the establishment of transaction values for the Tuna Fillets™; (ii) the $1.67 conversion cost represented Chotiwat's estimate of the per case Processing Fee to be incurred by plaintiff; (iii) the parties jointly agreed that Chotiwat would be able to recover 40% of purchased tuna, either in the production of the Tuna Fillets™ or otherwise; and (iv) in submitting commercial invoices to plaintiff, Chotiwat unilaterally increased the estimated processing fees above actual costs and allocated all fish costs to the Tuna Fillets™ project rather than charging for fish recovery actually used, both actions being contrary to those required under the Cost Sheets. . . .

    8.    Denies, based on deposition testimony . . . that Chotiwat's unilateral action changed what the defendant has characterized as the "agreed-upon terms" but, rather, grossly inflated its estimated Processing Fee and incorrectly computed the estimated fish costs allocable to the Tuna Fillets™ in issue.

    9.    Denies that Chotiwat unilaterally changed the "agreed-upon terms" . . . and avers that, after

       importation and following nearly ten (10) months of negotiations, Chotiwat acknowledged that it (i) had grossly overstated its estimated Processing Costs, as based on the Cost Sheets; (ii) had thus overcharged the plaintiff in contravention of the Cost Sheets; and (iii) was contractually obligated to make restitution to the plaintiff of the monies incorrectly assessed in contravention of the Cost Sheets.

       10.   Admits that Chotiwat restored . . . the $1,544,104.17 in monies it had overcharged plaintiff through its incorrect and highly inflated use of fish cost estimates, denies that this was a "reimbursement" since this restitution was in no sense of the term a "repayment for expense or loss incurred" by the plaintiff and avers . . . that the actions taken by Chotiwat were in complete derogation of the Cost Sheets and a flagrant attempt to restructure the underlying transactions contrary to the Cost[] Sheets which had been agreed upon as controlling and were in effect prior to exportation.

Citations omitted.

A

       If the foregoing are the salient facts of this matter, after due deliberation engendered by the parties' papers filed in support of and opposition to its disposition via summary judgment, this court cannot and therefore does not conclude that a trial within the meaning of USCIT Rule 56 and teaching of <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), and <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242 (1986), and their progeny is necessary.  The evidence already part of the record herein is sufficient basis to resolve the two counts of plaintiff's complaint as a matter of law. With regard to classification, its counsel state that the

>packing medium in the . . . Tuna Fillets™ is predominately <u>water</u>. The sole question before the Court is whether the addition of any amount of oil to water in the formulation of an added sauce or flavoring mandates that the product be classified in oil. The addition of sunflower oil, broth and flavorings to water serves a utilitarian function unrelated to packing. Thus, it is a stretch beyond reason to treat the Tuna Fillets™ as though "packed in oil." When properly understood, the U.S. Note should not be interpreted as transforming the Tuna Fillets™ products in issue into a fish packed "in oil."

Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, pp. 10-11 (emphasis in original).

As for its second count, the plaintiff represents that

>understanding the Cost Sheet is the key to understanding how and why value is an issue in this case. In this regard, the Court need only focus on the two line items on the Cost Sheet that represented the parties' best "estimates" as to likely cost.

<u>Id</u>. at 27. And the plaintiff confirms that much of what it would establish through the testimony of three witnesses in open court is already part of defendant's motion via transcripts of their depositions labelled exhibits C, J, and K. <u>See</u> <u>id</u>. at 20.

II

Also attached to that motion as exhibit F is a copy of CBP ruling letter HQ 967515 (March 21, 2005), which issued in

response to a request that plaintiff's merchandise be classified under subheading 1604.14.22 of the Harmonized Tariff Schedule of the United States ("HTSUS") ("Tunas . . . In airtight containers: . . . Not in oil: . . . 6%") or subheading 1604.14.30 ("Tunas . . . In airtight containers . . . Not in oil . . . Other . . . 12.5%").

To the extent plaintiff's pouches contain any oil, CBP denied its request.[1] The ruling recited Additional U.S. Note 1 to HTSUS Chapter 16:

> . . . [T]he term "<u>in oil</u>" means packed in oil or fat, or in added oil or fat and other substances, whether such oil or fat was introduced at the time of packing or prior thereto.

Underscoring in original. And it gave heed to the decision of the U.S. Court of Customs Appeals in <u>Strohmeyer & Arpe Co. v. United States</u>, 5 Ct.Cust.App. 527 (1915), T.D. 35175, affirming the Board of U.S. General Appraisers with regard to fish prepared by boiling in oil, after which the oil was drained off before packing with tomato sauce in tin cans. Governing paragraph 216 of the Tariff Act of 1913 referred to "Fish . . . packed in oil or in oil and other substances", with the evidence in that matter showing some

---

[1] The agency did rule that, since plaintiff's packing of its *Teriyaki* tunafish contains no oil, those pouches could enter at the preferred *ad valorem* duty rate(s), the statutory difference depending upon fulfillment of the applicable tariff rate quota. <u>See</u> Defendant's Exhibit F, p. 4.

5.7 percent residual oil in the sealed sauce.  Whereupon the Board held it

> immaterial how the vegetable oil became present in the tins; that if, as a matter of fact, the substance in which the fish were found in the tins as packed consisted of oil and other substances, this is sufficient to bring it within the first provision of the paragraph.

5 Ct.Cust.App. at 528.  In affirming, the court of appeals stated that the tariff was not directed at the method of application of the oil, rather at "any case in which oil is part of the substance in which the fish is found packed when offered for importation." Id.  While recognizing that the percentages of oil in the goods now at bar are less than that in Strohmeyer, CBP does not find that case distinguishable:

> . . . [I]t is not relevant whether the oil is added solely for packing purposes or added for flavoring purposes.  The presence of oil in the medium in which the fish is found packed[] is sufficient to describe the fish as "packed in oil."

Defendant's Exhibit F, p. 3.

Not satisfied with this ruling, the importer requested and received CBP reconsideration.  See Defendant's Exhibit G (HQ 967742 (Nov. 22, 2005)).  Specified as reasons therefor were that (1) CBP's interpretation of Additional U.S. Note 1 to HTSUS Chapter 16 failed to consider the legislative history involved, (2) HQ

967515 disregarded regulations of the U.S. Food and Drug Administration ("USFDA"), and (3) HQ 967515 is "wholly lacking in meaningful purpose". Id. at 2. None of these arguments caused Headquarters to reverse or revise that ruling letter.

With regard to the first point, the agency considers the language of Additional U.S. Note 1, supra, to be clear, thereby forestalling any resort to legislative history, citing C.J. Tower & Sons v. United States, 41 CCPA 195, C.A.D. 550 (1954), and Continental Mfg. Co. v. United States, 82 Cust.Ct. 187 (1979). See id. at 2-3. Secondly, HQ 967742 cites the opinion of this court in Bestfoods v. United States, 28 CIT 1053, 1058, 342 F.Supp.2d 1312, 1316 (2004), to the effect that USFDA standards of identity are not controlling for tariff classification purposes and also points out that the arguably apposite regulations of that agency developed well after the tariff standard controlling herein. See id. at 4. Finally, that ruling letter of reconsideration states that the importer's concerns regarding "meaningful purpose"

> are best remedied through legislation. CBP is not empowered to set duty rates, only to apply them according to the law.

Id. HQ 967515 was thereupon affirmed.

A

Of course, the posture of the court is no different than that of CBP *vis-à-vis* an act of Congress. When legislation is clear on its face, neither an administrative agency nor the judiciary is at liberty to rewrite it, or to construe it in a manner arguably more desirable.

The nature of the merchandise at bar is evident: none of plaintiff's tunafish is genuinely packed in oil as a matter of either simple sense or scientific analysis. Indeed, the defendant admits as much with regard to the *Teriyaki* pouches. But the other brands do contain some oil, and the defendant points to a century of tariff enforcement to the effect that "in oil" signifies any amount of such substance. And no amount of cogent, contrary reasoning of the kind plaintiff's counsel now present[2] dispells this phenomenon judicially. While the quantum of residual "visible" oil apparently found in Strohmeyer (5.7 percent) was greater than in any of plaintiff's goods herein, there is no indication that particular amount was of moment to any of the three U.S. General Appraisers or to any of the five judges revisiting the matter in the court of appeals. Nor do plaintiff's papers point to a contrary case in court since then.

---

    [2] The plaintiff has interposed a motion for leave to file a sur-reply in this action that can be, and it hereby is, granted.

Court No. 07-00109                                                    Page 11

With regard to regulations of the USFDA, this court is not persuaded to digress now from its opinion in <u>Bestfoods v. United States</u>, <u>supra</u>, and the cases relied on therein. Ergo, CBP's classification of certain of plaintiff's pouches of tunafish under HTSUS subheading 1604.14.10 (2005) at a duty rate of 35 percent *ad valorem* should stand.[3]

---

[3] Counsel for the plaintiff have attached to their thorough papers in opposition to defendant's motion for summary judgment a copy of U.S. Customs Service ruling letter NY H88884 (March 26, 2002) that four pouched *Tuna Creations* would be classified upon entry under either HTSUS subheading 1604.14.2040 or subheading 1604.14.3040. According to that letter, plaintiff's exhibit 15, absorbed within the tuna flesh in two of the pouches was 5 percent sunflower oil, with that in a third possessed of 2 percent of that substance. The letter proceeded to state:

> . . . Samples of these products were found to consist of small chunks and flakes of flavored tuna fish meat. The pouches contained only tuna meat pieces, colored slightly by the marinade, but with no apparent packing medium,-- i.e., the pouches contained only pieces of tuna, which had absorbed any marinade, and which were not packed in any accompanying medium, such as, for example, in water, in oil or in sauce.

Plaintiff's Exhibit 15, first page.

Even if this court were to accept plaintiff's premise that NY H88884 is at odds with HQ 967515 now at issue herein, it could not and therefore would not conclude that the first ruling trumps the latter. Moreover, as just recited, the former did not find its fish "packed in" any medium.

As for the argument posited at page 12 of plaintiff's brief in opposition to summary judgment that,

(footnote continued)

### III

The Tariff Act of 1930, as amended, 19 U.S.C. §1401a-(b)(1), provides that the transaction value of imported merchandise is the price actually paid or payable when sold for exportation to the United States. The statute further provides:

> Any rebate of, or other decrease in, the price actually paid or payable that is made or otherwise effected between the buyer and seller after the date of the importation of the merchandise into the United States shall be disregarded in determining the transaction value under paragraph (1).

19 U.S.C. §1401a(b)(4)(B).

The plaintiff would have CBP (and now the court) ignore this mandate based upon the *post*-importation dealings between it and Chotiwat Manufacturing Co. Ltd. outlined above.[4] Suffice it to

---

> [i]nasmuch as the sunflower oil included in the StarKist® Tuna Creations™ pouched tuna serves the same purpose as, albeit in greater quantities than, the sunflower oil present in any of the Tuna Fillets™ products, it is important that the Court hear first hand from the Customs attorneys involved in the issuance of the Rulings involving the Tuna Fillets™ products before the Court on exactly how this strange result can occur[,]

the court hardly requires a trial for such purpose.

[4] Part of plaintiff's opposition to summary judgment as a matter of procedure is that its three putative witnesses to those dealings could at trial somehow add to that already part of the papers before the court via defendant's deposition transcripts labelled exhibits C, J, and K and pages 19-30 of discussion thereon in plaintiff's brief.

state that the papers filed herein adequately describe those dealings, but they do not cite a single court opinion that would persuade the undersigned to conclude that CBP acted contrary to the foregoing statute in this matter of valuation.

IV

In view of the foregoing, defendant's motion must be granted, with summary judgment entered accordingly.

So ordered.

Decided: New York, New York
         October 12, 2012

                                          /s/ Thomas J. Aquilino, Jr.
                                                    Senior Judge

# J U D G M E N T

## UNITED STATES COURT OF INTERNATIONAL TRADE

Thomas J. Aquilino, Jr., Senior Judge

```
- - - - - - - - - - - - - - - - - - -x
DEL MONTE CORPORATION,              :

                Plaintiff,:

        v.                          :   Court No. 07-00109

UNITED STATES,                      :

                Defendant.:
- - - - - - - - - - - - - - - - - - -x
```

This action having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; Now therefore, in conformity with said decision, it is

ORDERED, ADJUDGED and DECREED that defendant's motion for summary judgment be, and it hereby is, granted; and it is further

ORDERED, ADJUDGED AND DECREED that plaintiff's complaint be, and it hereby is, dismissed.

Dated: New York, New York
       October 12, 2012

                                      /s/  Thomas J. Aquilino, Jr.
                                              Senior Judge